937 F.2d 609
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricky Lee NEWTON, Defendant-Appellant.
 No. 90-1784.
 United States Court of Appeals, Sixth Circuit.
 July 23, 1991.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 The defendant-appellant in this case, Ricky Lee Newton, pled guilty to manufacturing marijuana. For the reasons which follow, we affirm the judgment, but remand for resentencing.
 
 
 2
 On August 16, 1989, the Michigan State Police seized a number of marijuana plants, some of which had been uprooted. After chemically testing the plants to show they were marijuana, the police destroyed them. The state charges against defendant-appellant Ricky Lee Newton were dismissed shortly before trial, and the federal case was instituted.
 
 
 3
 On December 7, 1989, a federal grand jury charged Newton with manufacture of more than 1,000 marijuana plants, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(A)(vii). Newton then filed a motion to dismiss, arguing that because the government had deliberately destroyed the plants the indictment should be dismissed. The magistrate rejected this argument because (1) there was no indication of bad faith, (2) it was highly unlikely Newton's recount would reveal fewer than statutory minimum of 1,000 plants, and (3) the plants were not "constitutionally material" to Newton's defense. J.App. at 43. The magistrate relied, in part, on Arizona v. Youngblood, 109 S.Ct. 333, 337 (1988), which held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." A second motion to dismiss, arguing that the government erred in counting the group of uprooted dead plants because the plants were abandoned, was also rejected.
 
 
 4
 After the denial of his motions to dismiss, Newton pled guilty to manufacturing more than 1,000 plants. Newton was sentenced to sixty-three months imprisonment. This timely appeal followed.
 
 
 5
 In denying Newton's motion, the district court relied on Youngblood, supra, and California v. Trombetta, 467 U.S. 479 (1984). In Trombetta, a defendant charged with drunk driving alleged a due process violation because the state failed to preserve his breath samples. The Supreme Court in Trombetta rejected the defendant's argument because: (1) the officers acted in good faith in destroying the evidence, and (2) the samples could not play a large part in defendant's defense and thus were not "constitutionally material" because the exculpatory value of the evidence must be apparent before the destruction of the evidence. Id. at 488-89. Furthermore, it was highly unlikely further testing of the samples would lead to a different result.
 
 
 6
 Newton alleges that the federal prosecutors acted with bad faith by cooperating with the state authorities to dismiss the state indictment and bring a federal indictment without the actual plants. Newton also tries to distinguish Youngblood and Trombetta by alleging that the plants were "not some mere corroborative or collateral piece of potentially useful evidence--they were the corpus delicti." Brief of Defendant at 7.
 
 
 7
 Newton also relies heavily on a recent district court case from Virginia, United States v. Belcher, No. 89-00156-B (W.D.Va. Mar. 13, 1991). In Belcher, the court dismissed an indictment for manufacturing marijuana because state authorities had destroyed the marijuana without performing any tests on it. Applying the Trombetta test, the court's analysis turned on the fact that the evidence was not tested before destruction:
 
 
 8
 [I]t is clear that the Belchers certainly could not secure "comparable evidence by other reasonably available means." This is because the Belchers' alleged crimes concern formerly-distinct plants that no longer exist and that were never tested to determine what they were. The information those plants contained is lost forever and will never be available to the Belchers.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 It is a troubling prospect if government officials can routinely destroy drugs, then argue that the drugs had no exculpatory value because the government officials "knew" that the drugs were indeed drugs.... [T]he facts here are significantly different from those in Trombetta in at least two particulars: the State officials performed no tests of any sort on the alleged marijuana, and the fact of the former existence of the very plants that the State officials destroyed will be the crucial item of evidence at trial.
 
 
 12
 Belcher, slip op. at 11-12 (citations omitted).
 
 
 13
 We realize that the marijuana plants were the only evidence against Newton, and therefore the plants "might be expected to play a significant role in the suspect's defense." Trombetta, 467 U.S. at 488. However, we agree with the district court that, in this case, the plants themselves were not material in the sense that destruction of the plants would be a constitutional violation. The crucial distinction in Newton's case is that Michigan officials performed tests on some of his plants to determine that the plants were marijuana. Thus, the only exculpatory value to the plants would be the opportunity to recount them. Photographs of the plants were taken, which Newton could have utilized to demonstrate that there were fewer than the statutory minimum of 1,000 plants.
 
 
 14
 Belcher also declined to apply the bad faith requirement in Youngblood. However, our reading of the majority opinion in Youngblood does not suggest, as Belcher stated, that the bad faith requirement only applies if the evidence destroyed was utilized against the defendant in the prosecution's case in chief. See Youngblood, 109 S.Ct. at 337 ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").
 
 
 15
 Newton is unable to identify any evidence of bad faith. At the time the plants were destroyed, it does not appear a federal prosecution was foreseen. The Michigan statute does not vary penalties according to the number of plants, as does the federal statute. Thus, the exculpatory value of the plants in a federal prosecution could not have been apparent at the time of destruction three months before the federal indictment was brought. Furthermore, as a practical matter, preservation of such a large number of plants would be difficult. In light of Trombetta and Youngblood, we find that the district court did not abuse its discretion in denying Newton's motion to dismiss on the basis of destruction of the evidence.
 
 
 16
 Newton next argues that the male plants that had been discarded should not have been included in the indictment because "the psychoactive properties" of female plants is much greater. In addition, Newton argues that because he intended to abandon all male plants, the male plants should not be included in the indictment. We find these novel arguments to be without merit. Whatever Newton's ultimate intentions may have been with respect to his marketing of the plants, 21 U.S.C. Sec. 841 makes no distinction between male marijuana plants and female marijuana plants. Similarly, Newton's contention that he had "abandoned" the uprooted plants is not legally significant in this appeal. As the district court stated, Newton would have been free to present his abandonment defense to the jury.
 
 
 17
 Newton also brings an ineffective assistance claim. In evaluating an ineffective assistance of counsel claim, this court must consider two factors: (1) whether "counsel's representation fell below an objective standard of reasonableness", and (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).
 
 
 18
 Newton's court-appointed attorney at trial was Thomas Casselman. Prior to his appointment as Newton's counsel at trial, Casselman consulted with Jim Fedie, a friend of Newton's and an associate in his marijuana-growing enterprise. At the sentencing hearing, Casselman revealed that he "advised" Fedie "[t]hat you'd better testify against whoever this ex-person is--it turned out to be Mr. Newton--because it appears that that person may be going to make a deal to testify against you." J.App. at 126. Casselman went on to say that:
 
 
 19
 [I]t came to pass I'm appointed to represent Mr. Newton, we're involved in these proceedings and Mr. Newton says to me, well you told Mr. Fedie to go ahead and represent himself for the Government's interest. Mr. Newton observing that can say, holy cow, I didn't get a choice of lawyers; I have to take what the Government gives me; and now they've given me one who told the other witness to go against me.
 
 
 20
 J.App. at 126.
 
 
 21
 Casselman negotiated Newton's plea agreement. Newton now argues that if he had gone to trial, Casselman would have been placed in a serious conflict of interest because, assuming Fedie testified, Casselman would have to impeach Fedie after earlier advising him to testify. Newton argues that Casselman suffered from a clear conflict of interest; that Casselman misadvised him; and that the attorney client relationship was waived. In addition, during the sentencing hearing, Casselman admitted that he "misled [Newton] unintendedly" because he did not fully understand the sentencing guidelines when he and Newton were trying to decide whether or not to go to trial. J.App. at 106.
 
 
 22
 In our view, Casselman's advice to Fedie did not present an actual conflict of interest because there never was a trial for Fedie to testify at. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest affected his lawyer's performance."). Casselman's single discussion with Fedie, before he represented Newton, did not amount to a disabling conflict on interest. As to Casselman's statement that he did not understand the federal sentencing guidelines, Newton had an opportunity to withdraw his plea, and refused. Even assuming that the errors fell below an objective standard of reasonableness, whatever errors made were, to a certain extent, discovered and rectified before sentencing. Thus, we do not find that, without the errors, the result in this case would have been different.
 
 
 23
 The final issue involves the district court's denial of a two-point reduction in Newton's base offense level for acceptance of responsibility. We note that the district court wrongly assumed that the government had the burden of proof in concluding that "the Government here has sustained by a preponderance of the evidence that ... there was [not] the requisite remorse and responsibility of acceptance for the criminal behavior." J.App. at 133. In this Circuit, however, the defendant bears the burden of proof of establishing facts which would lead to a reduction for acceptance of responsibility. United States v. Rodriguez, 896 F.2d 1031, 1032 (6th Cir.1990). The district court's conclusion that the government had met its burden of proof is puzzling because the government took no position as to reduction for acceptance and left the matter to Judge Bell's discretion. As a result, we remand for resentencing to allow the district court to apply the proper standard.
 
 
 24
 For the foregoing reasons, the judgment of the district court is AFFIRMED, but we REMAND for reconsideration of the acceptance of responsibility issue to allow the district court to determine if Newton has met his burden of showing acceptance.
 
 
 25
 ALAN E. NORRIS, Circuit Judge, concurring.
 
 
 26
 I concur with the majority that the judgment should be affirmed. However, I see no need to remand for sentencing, since imposition of the burden of proof upon the government worked to the defendant's benefit.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation